## In re Petition of Grant Building, Inc.

*E. E. McMonigle,* for Grant Building, Inc., appellant.

*David B. Fawcett,* for Employees' Independent Union, appellant.

*I. Charles Short,* for Pennsylvania Labor Relations Board.

*Bernard Kaplan,* for International Brotherhood of Electrical Workers, Local Union No. 5, petitioner.

RICHARDSON, J., July 23, 1942.—These cases are before us on proceedings in the nature of appeals under the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168. We are asked by Grant Building, Incorporated, and Employees' Independent Union of the Grant Building, Incorporated, to review orders of the Pennsylvania Labor Relations Board made after hearings on a petition filed by Local Union No. 5 of the International Brotherhood of Electrical Workers. For convenience, the parties will hereinafter be designated as "Grant Building", "Independent", "Board", and "Local No. 5".

Grant Building is a corporation owning, operating, and maintaining an office building in the City of Pittsburgh. It employs approximately 180 persons in various lines of work connected with the operation and maintenance of the building. The employes of the garage connected with the building are organized in a labor union affiliated with the American Federation of Labor. The carpenters, plasterers, and painters employed by Grant Building are members of their respective craft unions.

The remaining employes of Grant Building are organized in an unincorporated association called the "Independent". This union is the bargaining representative for these employes and has been recognized as such by the board, except to the extent of the modification made by the orders which are before us for review.

On May 20, 1940, Grant Building and Independent entered into a "closed shop" collective bargaining agreement. This agreement provided for hours of work, rates of pay, etc. It contained the following paragraph:

"This agreement shall be effective as of April 1, 1940, and shall terminate as of May 31, 1942, and thereafter shall run from June 1, 1942, for a period of one year from said date, and so on from year to year, unless either party to the said agreement shall within sixty

(60) days from the termination thereof, or an extension thereof, notify the other party in writing that it desires to terminate said agreement."

When this agreement was entered into, the four electricians employed by Grant Building were members of Independent. On or about September 9, 1940, three of these electricians became members of Local No. 5, retaining, however, their membership in Independent and paying dues thereto. Their original affiliation with and continuing membership in Independent was known to the officers of Local No. 5 when their applications to that union were accepted.

On September 27, 1940, Local No. 5, by its business manager, filed a petition with the board alleging that a majority of the four electrical workers employed by Grant Building were desirous of being represented by Local No. 5 for collective bargaining purposes. Petitioner requested the board to investigate the matter and to certify the name of the representative who had been designated or selected for the purpose of collective bargaining by the majority of the electrical employes in a unit appropriate for such purposes.

The board directed an investigation of the subject matter of the petition, and fixed a date for hearing before a trial examiner. Grant Building and Independent filed answers and a hearing was had. On May 21, 1941, the board entered an order dismissing the petition of Local No. 5, "without prejudice, however, to the right to institute further action at the expiration of the aforesaid agreement, entered into by and between Grant Building, Incorporated, and Employees' Independent Union of the Grant Building, on May 20, 1940, or after written notice to terminate the said agreement, pursuant to the terms thereof."

Local No. 5 filed exceptions to the board's decision and order, and these exceptions were argued before the board by counsel for the Local, Grant Building, and Independent on July 22, 1941. On November 19, 1941,

the board entered an order in which one of the exceptions filed by Local No. 5 was sustained. By its order, the board vacated the order of May 21, 1941, and reinstated the petition of Local No. 5. It further certified Local No. 5 as the exclusive representative of the electrician employes of Grant Building "for the purpose of negotiating and entering into future contracts with Grant Building, Incorporated, relating exclusively to the employes within the said unit, upon the expiration of the existing contract".

In its decision which accompanied the order of November 19, 1941, the board took cognizance of the agreement of May 20, 1940, and provided:

"7. That the unit appropriate for the purposes of collective bargaining between Grant Building, Incorporated, and its three electrician employes, who are members of the International Brotherhood of Electrical Workers, Local Union No. 5, is the craft unit, *but that the said electrician employes shall operate under the contract existing between Grant Building, Incorporated, and the Employees' Independent Union of Grant Building, Incorporated, until the thirty-first day of May, 1942.*"

Prior to the order of November 19, 1941, the members of the garage employes union struck and a bitter controversy resulted. Dissatisfaction spread to members of Independent, with the result that demands were made for an amendment of the contract of May 20, 1940. On November 10, 1941 (nine days before the order of the board certifying Local No. 5 as bargaining representative for the electrical workers), the original contract was amended to provide for increases in the scale of wages of the members of Independent, and the agreement was extended until May 31, 1943.

On December 5, 1941, Grant Building filed with the board its petition asking that the decision and order of November 19, 1941, be modified to read that "after May 31, 1943," Local No. 5 be certified as the bargain-

ing agent for the electrical employes. The petition recited the circumstances leading up to the amendment of November 10, 1941, the execution of that amendment, and the acceptance of its provisions by the members of Independent, including the three electricians. It asserted that the electricians were obligated to perform services for the Grant Building in accordance with the terms and conditions of the amended agreement until May 31, 1943.

On December 5, 1941, Independent filed a petition asking the board to grant a rehearing in the matter, and to modify and amend its order of November 19, 1941, "so that no certification is to be made until a time nearer the termination of the existing labor agreement or that the effective date of the certification be upon the expiration of the present existing labor agreement, namely, May 31, 1943".

Answers were filed by Local No. 5 to these petitions. On May 4, 1942, the board entered an order dismissing the petitions. Grant Building and Independent filed petitions for review of the board's orders of November 19, 1941, and May 4, 1942. Thereupon, the entire record was certified to this court by the board.

Two questions are raised by the petitions for review. The first is whether, under the circumstances, the three electrical employes of Grant Building are "estopped" from seeking to have the contract with Independent, and its amendment, set aside as to them, in order that a new contract be entered into in their behalf by Local No. 5. We do not believe that estoppel can be asserted or applied in cases of this nature. Nevertheless, since the question has been raised, the facts must be examined in order to determine the positions of the several parties.

The board's order of November 19, 1941, recognized the validity of the contract of May 20, 1940, and provided that its terms should be operative as to the electricians until May 31, 1942. However, in the proceed-

ings on the petition of Local No. 5 for certification, the individual electricians testified and indicated their preference for Local No. 5 as the bargaining agent of their group. Their action in remaining as members of Independent did not mislead the Grant Building or Independent, and the mere fact that they proceeded to accept the benefits of the contract with Independent pending a decision of the board does not prevent the board from requiring that a contract which shall be operative only after May 31, 1942, shall be entered into for the benefit of the electricians by their appropriate bargaining unit. Grant Building, in its brief, concedes that employes have a clear right to secede from, as well as join, labor organizations of their own selection. While there was no actual secession of the electricians from Independent prior to the signing of the amended contract and the extension of the duration of the original agreement, nevertheless the position of the electricians and their choice of a bargaining representative was known to Grant Building and to Independent, and neither was misled by any action of the electrical employes or Local No. 5.

The second question may be stated: Where an employer and a labor organization extend the term of a contract prior to the determination by the board of a pending controversy concerning the representation of employes, may the board certify a bargaining representative, subject to the requirement that said employes shall operate under the agreement to its original expiration date, rather than to the date provided for in the extended contract?

It is asserted by appellants that the orders of the board contravene the provisions of the Federal and State Constitutions prohibiting laws which impair the obligation of contracts. Neither Grant Building nor Independent seriously challenges the right of the board to certify Local No. 5 as the bargaining agent of the electrical workers of the Grant Building and, in our

opinion, the provisions of the Act of June 9, 1939, P. L. 293, amending section 7(*b*) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, 43 PS §211.7, clearly confer this right. As amended, the paragraph provides:

"(*b*) The board shall decide in each case whether, in order to insure to employes the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided, That if the majority of a craft union within a plant, or employer unit, signify its wish for a craft unit, the board shall designate the craft unit as the unit appropriate for the members of that union.*" (Italics supplied.)

Appellants' principal attack is made upon that part of the order of November 19, 1941, which fixed May 31, 1942, as the last date of effective operation of the contract of May 20, 1940, and its amendment insofar as the electrical workers are concerned. In support of their position petitioners urge upon us that the electrical workers, through Independent, have entered into a valid and subsisting contract which under the agreement extends to May 31, 1943, and they, through their certified bargaining agent, should be required to perform their obligations under the contract as amended until that time. To require otherwise would result, they contend, in an impairment of the obligation of the electricians to accept the provisions of the contract until May 31, 1943. The Pennsylvania Labor Relations Act of June 1, 1937, as amended, has been declared to be within the lawful exercise of the police power of the Commonwealth: United Retail Employees of America, Local No. 134, v. W. T. Grant Co., Inc., 341 Pa. 70. When the contract of May 20, 1940, was entered into that act entered into the agreement with the same effect as if it were expressly incorporated therein. To the ex-

tent that the board was empowered by the act to modify or alter the provisions of the original contract, both parties were subject to that authority. When the original petition of Local No. 5 was under consideration, the board recognized the existence of the contract of May 20, 1940, and in its discussion said:

". . . To permit the electrical workers to now change their representative or to change the unit appropriate would result in impairing the obligations of a valid existing contract, freely entered into with full knowledge of the corresponding rights and obligations."

The board, perhaps, prescribed too severe a limitation upon its own powers, but its policy was wise.

When exceptions were filed to the board's order of May 21, 1941, petitioners here had knowledge that the order was not final and when they entered into the amendment of November 10, 1941, neither Grant Building nor Independent was ignorant of the right of the board to certify Local No. 5 as the exclusive representative of the electricians for the purpose of negotiating further agreements with Grant Building. Consequently, the obligations assumed by the parties to the amendment of November 10, 1941, were undertaken subject to the clear right of the board to reconsider the question of certification of Local No. 5 as the representative of the electricians. While it is true, as stated in the brief of Grant Building, that Grant Building had no knowledge that the order of May 21, 1941, would be modified when the amendment of November 10, 1941, was entered into, nevertheless it is clear that the amendment was entered into at a time when the board was reconsidering the question of a representative for the electrical workers and the agreement could only be made subject to the action of the board in that respect.

In determining a time when the bargaining power of Local No. 5 should become effective, the board had for its first consideration the question whether or not the duration of the contract was for such a long

period as to be contrary to the policies or purposes of the act. If the position of petitioners is sound and the board has no power to determine when the authority of a new bargaining agent shall begin, employes who are in a majority in their craft unit, but a minority in the employer unit, will be unwilling beneficiaries of a contract which can be extended indefinitely by automatic renewal provisions. Such an arrangement would defeat the policy of the Pennsylvania Labor Relations Act and be in direct violation of the provision which requires the board to designate the craft unit as the unit appropriate for bargaining purposes. See Triboro Coach Corp. et al. v. New York State Labor Relations Board et al., 286 N. Y. 314.

The question as to the effective date of the bargaining power of the certified representative of the electrical workers was purely a matter of policy for the board. In our opinion, it handled the matter fairly and with good judgment. However that may be, the board had the power to certify Local No. 5 as the bargaining agent for the electricians, and to require that if the original bargaining agreement was amended after the petition of Local No. 5 for certification was presented the certified bargaining agent become a party to the contract when the original agreement expired.

In our opinion, the orders of the board were proper, and they should be affirmed.

### Order (Case No. 1547)

And now, July 23, 1942, the petition of Grant Building, Incorporated, having come on to be heard, upon consideration thereof and upon review of the orders of the Pennsylvania Labor Relations Board of November 10, 1941, and May 4, 1942, said orders are affirmed.

### Order (Case No. 1524)

And now, July 23, 1942, the petition of Employees' Independent Union of the Grant Building, Incorpo-

rated, having come on to be heard, upon consideration thereof and upon review of the orders of the Pennsylvania Labor Relations Board of November 10, 1941, and May 4, 1942, said orders are affirmed, for the reasons stated in the opinion filed at no. 1547, July term, 1942.